# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 1, 2012

## STATE OF TENNESSEE v. KALVIN HARDAWAY

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-05797     James C. Beasley, Jr., Judge**

---

**No. W2011-02332-CCA-R3-CD  - Filed April 19, 2013**

---

A Shelby County Criminal Court Jury convicted the appellant, Kalvin Hardaway, of reckless aggravated assault and initiating a false report, Class D felonies.  After a sentencing hearing, the trial court sentenced him as a Range III, career offender to twelve years for each conviction to be served concurrently.  On appeal, the appellant contends that the evidence is insufficient to support the convictions and that the trial court erred by refusing to allow him to question the victim about the victim's drug use.  Based upon the record and the parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and ROGER A. PAGE, J., joined.

Barry W. Kuhn (on appeal) and Michael Johnson (at trial), Memphis, Tennessee, for the appellant, Kalvin Hardaway.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pam Fleming, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

In July 2010, the Shelby County Grand Jury indicted the appellant for aggravated robbery and initiating a false report.  At trial, Nicholas Moscon, the victim, testified that on the afternoon of April 5, 2010, he was on his way to Home Depot to pick up plumbing

supplies. Afterward, he was planning to go to the bank to deposit some money. The victim had been paid earlier that day and had more than six hundred dollars in his wallet. As the victim was driving east on Court Avenue to Home Depot, his truck "broke down." The victim stayed with his truck and tried to fix the vehicle. About four hours later, the appellant, who was traveling west on Court Avenue, pulled up in a white car and asked the victim, "'[H]ave you got it going yet[?]'" The appellant stopped so that the battery in the white car was next to the battery in the victim's truck. The victim said that he had never seen the appellant before that day and that he did not know the appellant.

The victim testified that he had jumper cables attached to his truck's battery, that he thought the appellant was going to give him a "jump," and that he pulled out his wallet to give the appellant "a few dollars. . . . Just to be nice." The appellant, who was still sitting in the car, grabbed the victim's wallet. The victim reached into the car and grabbed the steering wheel. The victim said that the appellant "[took] off" but could not steer the car and that the appellant was dragging him outside the car. The victim said that the car hit a tree and that the driver's side air bag deployed, causing him to "go flying." He hit his head on the curb, broke his foot, and received road rash on his foot, knee, shoulder, back, and hip. After the crash, the appellant got out of the car and ran west on Court Avenue. The victim's wallet and money were on the ground, and two hundred six dollars was missing. When the police arrived, the victim gave them a description of the robber. About fifteen minutes later, the victim was sitting in the back of a patrol car when he saw the appellant walk back to the scene. The State showed the victim photographs taken on the day of the incident, and he identified himself wearing his work clothes and having injuries to various parts of his body.

On cross-examination, the victim testified that during the four hours he was working on his truck, he kept trying to start the vehicle, which caused the battery to go "dead." He had jumper cables with him but did not ask anyone to help him jump-start the truck. When the appellant pulled up in the white car, the victim was standing about an arm's length away from him. The victim pulled his wallet out of his back pocket, and the appellant grabbed the wallet with the appellant's left hand. The car traveled about seventy-five feet before it hit the tree. After the crash, two one-hundred-dollar bills were missing from the victim's wallet. The police later recovered two one-hundred-dollar bills from the appellant. The victim said the incident occurred about 7:30 p.m., and he denied that he was buying drugs from the appellant. He said he did not seek medical attention for his injuries because he did not have health insurance.

Officer Stephen Foglesong of the Memphis Police Department (MPD) testified that on April 5, 2010, he responded to a robbery call on Court Avenue. He said that when he arrived, the victim was "disheveled" and had injuries to his side and legs. The victim was in pain and was having trouble walking. The victim's truck was facing east, and a car facing

west had crashed into a tree. While Officer Foglesong was responding to the incident on Court Avenue, someone reported to the police department that a vehicle had been stolen. Officer Foglesong said that the vehicle had been stolen from an address "around the corner" from Court Avenue. Another officer responded to that call and spoke with the appellant "or whoever it was making the complaint." Officers on Court Avenue noticed that the description of the stolen vehicle matched the car that had crashed into the tree and thought the two incidents could be related. The victim gave a description of his assailant and later identified the appellant at the scene. The victim also told Officer Foglesong that two hundred six dollars was missing from his wallet. When the appellant was arrested, the police found two hundred three dollars, including two one-hundred-dollar bills, in his right shoe.

On cross-examination, Officer Foglesong testified that the police searched the wrecked car but did not find anything. The appellant was transported to the scene of the wreck in a patrol car; he did not walk to the scene.

Officer Charles Lowrie of the MPD testified that on April 5, 2010, he responded to a stolen vehicle call at the Circle K gas station on Madison Avenue and spoke with the appellant. The appellant claimed that he had left his car with the keys inside at gasoline pump number seven and went into the store. When the appellant came out of the store, he saw the car traveling south on Cleveland from Madison. Officer Lowrie broadcast information about the stolen car and learned that a car matching the description had crashed into a tree on Court Avenue. Officer Lowrie took the appellant to Court Avenue, which was no more than a couple of blocks from the Circle K, and the appellant identified the wrecked car.

Sergeant Charles Smith of the MPD testified that the appellant was brought to the police department on April 5, 2010. The appellant wanted to know why he was going to jail, and Sergeant Smith advised him that he was a suspect in a robbery. The appellant claimed that he was a drug dealer, that he sold drugs to the victim before the crash, and that the victim reached into the car to steal more drugs.

Sergeant John Simpson of the MPD testified that he investigated the robbery, read Miranda warnings to the appellant, and interviewed the appellant. The appellant gave a statement in which he said the following: On April 5, the appellant was driving a 2002 gold Dodge Stratus owned by his friend, Monica Hobbs. The appellant had borrowed the car from her and was on his way to his brother's house when he saw the victim, whom he knew as "White Boy," on Court Avenue. The victim's truck hood was up, and the appellant stopped and asked the victim if he needed any help. The victim said he needed "a boost" and asked if the appellant had jumper cables. The victim claimed he knew the appellant, called the appellant "Lee Kalvin," and asked if the appellant knew the victim from jail. The victim also

asked if the appellant knew where the victim could find crack cocaine, and the appellant told the victim that he had some. The victim gave the appellant two hundred dollars, and the appellant gave the cocaine to the victim. The victim looked at the cocaine, said that it was not enough, and threw it in the appellant's lap. The victim told the appellant that "I got your ass" and grabbed the appellant's shirt. The victim "snatched the wheel," the car rolled, and the car hit a pole. After the crash, the appellant realized that he had marijuana on his person. He got scared, ran to the gas station, and telephoned Hobbs "to report the car stolen." The appellant said in his statement that when Hobbs arrived at the gas station, "we called the police." The police told the appellant that they had found the car and transported him and Hobbs to Court Avenue. The appellant told the police that the victim had bought drugs from him, and the police arrested the appellant. In his statement, the appellant acknowledged that he knowingly and falsely reported the car stolen.

On cross-examination, Sergeant Simpson testified that Hobbs consented to a search of her car and that the police found "fake" cocaine inside. Sergeant Simpson acknowledged that the victim was an inmate at the penal farm from December 3 to December 9, 2009. The appellant also was an inmate at the penal farm during that time. Sergeant Simpson said, though, that the appellant and the victim were housed in separate "PODS" and that "their paths should not have . . . crossed." On redirect examination, Sergeant Simpson testified that the victim was at the penal farm for a couple of days on "driving charges" and that the appellant "was there for a crime that he was convicted of and serving a sentence." The appellant had claimed that he and the victim were at the penal farm together for four or five months in 2006 to 2007. At the conclusion of Sergeant Simpson's testimony, the State rested its case-in-chief.

The appellant testified that on April 5, 2010, he was driving to his brother's house and saw the victim's truck on the side of Court Avenue. The truck's hood was propped open like the victim was having trouble with the truck's battery, and the appellant stopped because the victim looked like he needed help. The appellant knew the victim as "White Boy" and had met him while they were at the penal farm. When the appellant stopped, the victim called him "Kal" and asked if the appellant was still dealing crack cocaine. The appellant offered to sell the victim cocaine, and the victim said he would spend two hundred dollars. The victim gave the money to the appellant, and the appellant gave him four or five grams of crack cocaine.

The appellant testified that the victim walked to his truck, returned to the appellant, and said, "'I don't like this, this ain't enough.'" The appellant refused to refund the victim's money. The victim was mad, threw the cocaine, and grabbed the appellant. The appellant pushed the accelerator of the car because he was scared. The victim held onto the appellant, and the appellant tried to get the car to the other side of the street so he could park it.

-4-

However, he swerved and hit a tree. The airbag deployed, and the victim fell away from the car. The appellant did not have a driver's license and had marijuana with him. He was scared, so he went to the Circle K and telephoned Monica Hobbs. The appellant told Hobbs that he "was in a crash over selling some drugs." Hobbs came to the Circle K, telephoned the police, and reported the car stolen. The appellant never told Hobbs the car had been stolen.

The appellant testified that the police arrived and took him and Hobbs to Court Avenue. The appellant said that while they were there, the victim identified him as "the mother [f*****] that robbed me." The police arrested the appellant, searched him, and found some money. The appellant gave a statement and told the truth in his statement. He said that he did not grab the victim's wallet or pull the victim into the car. He said that the victim gave him the two hundred dollars for the cocaine and that he put the money in his shoe because he was a drug dealer and the money would be safe there. The appellant said that he had spent some time at the penal farm and that he was on work detail while he was an inmate, which allowed him to move around the facility. He met the victim at the penal farm.

On cross-examination, the appellant testified that neither he nor the victim had jumper cables on April 5. He said that he was mistaken about the dates he was at the penal farm and that he saw the victim at the facility every day the victim was there. They would meet in the cafeteria. The appellant did not tell Hobbs the car had been stolen. However, he acknowledged saying in his statement that when she arrived at the Circle K, "we" called the police. He stated that by "we," he meant that "me and her was standing there together." He said he did not tell the police that he left the car at pump number seven, that he went into the store, or that he saw the car traveling away from the store. He said the police got that story "[f]rom the girl in the store." He said that the "girl" was the store's cashier, that she knew the appellant, and that she came up with the story on her own. The police spoke with the cashier but did not ask the appellant anything, and the appellant did not tell them anything about the car. The appellant never saw road rash on the victim. He acknowledged having prior convictions for failure to appear, theft of property valued more than five hundred dollars, theft of property valued more than one thousand dollars, and burglary of a motor vehicle.

Michael Howes, the Deputy Administrator for the Shelby County Division of Corrections, testified on rebuttal for the State that the victim was housed in "7 Block" at the penal farm from December 3, 2009, to December 5, 2009. The appellant also was there at that time but was housed in Delta Building, which was a seven to ten minute walk from 7 Block. Howes stated that inmates at the penal farm were not allowed to walk freely from one place to another and that inmates in those two buildings should not have had any contact with each other. He said that according to the appellant's records, the appellant was not on work

detail while the appellant was at the penal farm. On cross-examination, Howes testified that he could not say the appellant and the victim did not see each other while they were at the facility.

Monica Hobbs testified for the State that about 5:30 p.m. on April 5, 2010, the appellant borrowed her car. About 8:00 p.m., he telephoned and told her that "someone ran off with [her] car at a BP." The appellant telephoned Hobbs again and told her that he was at the Circle K at the intersection of Cleveland and Madison. Hobbs called the police, reported the car stolen, and went to the Circle K. The appellant was there and told her that someone took the car from gasoline pump number seven. Hobbs talked with the store clerk, who informed her that the store did not have video surveillance.

On cross-examination, Hobbs testified that she had known the appellant "[s]ome years" and that she had known him to sell drugs. However, he did not tell her on April 5, 2010, that he was going to sell drugs. Hobbs acknowledged that she was upset with the appellant for wrecking her car because she still owed money for it. When the police arrived at the Circle K, they transported Hobbs and the appellant in a police car to the scene of the wreck.

On redirect examination, Hobbs testified that she called 911 and informed the dispatcher that her car had been stolen. Hobbs did not make a formal report over the telephone.

The trial court instructed the jury on the defenses of defense of property and self-defense. The jury found the appellant guilty of reckless aggravated assault, a Class D felony, as a lesser-included offense of aggravated robbery, a Class B felony. The jury also convicted him as charged of initiating a false report, a Class D felony. After a sentencing hearing, the trial court sentenced the appellant to twelve years for the convictions, to be served concurrently.

## II. Analysis

### A. Evidence Insufficient

The appellant contends that the evidence is insufficient to support the convictions. Regarding the reckless aggravated assault conviction, the appellant claims that the evidence fails to show that he used or displayed a deadly weapon. For the initiating a false report conviction, the appellant claims that the evidence fails to show he initiated a report to a law enforcement officer, knowing that the incident reported did not occur. The State argues that the evidence is sufficient. We agree with the State.

-6-

When an appellant challenges the sufficiency of the convicting evidence, the standard for review by an appellate court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence, nor will this court substitute its inferences drawn from the circumstantial evidence for those inferences drawn by the jury. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Reckless aggravated assault as it applies to this case occurs when a defendant recklessly causes bodily injury to another and uses or displays a deadly weapon. Tenn. Code Ann. § 39-13-101(a)(1), -102(a)(2)(B). A motor vehicle can constitute a deadly weapon for the purposes of aggravated assault. State v. Tate, 912 S.W.2d 785, 787 (Tenn. Crim. App. 1995). As charged in the indictment, a person initiates a false report when the person initiates a report or statement to a law enforcement officer concerning an offense or incident within the office's concern, knowing that the offense or incident reported did not occur. Tenn. Code Ann. § 39-16-502.

Turning to the instant case, the State contends that the evidence is sufficient to support the reckless aggravated assault conviction because the deadly weapon was a motor vehicle. We agree with the State. Taken in the light most favorable to the State, the evidence shows that the victim grabbed the steering wheel of the car and that the appellant pushed the accelerator, dragging the victim. The appellant crashed the car into a tree and caused the victim to sustain various bodily injuries. Thus, the evidence is sufficient to support the conviction. See State v. Andrew Boone, No. W2005-00158-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 1296, at **24-25 (Jackson, Dec. 27, 2005) (upholding defendant's conviction for reckless aggravated assault when defendant recklessly operated his vehicle as a deadly weapon and caused bodily injury to another).

Regarding the appellant's conviction for initiating a false report, the evidence shows that the appellant reported to Hobbs that her car had been stolen from the Circle K. The appellant said in his statement to Sergeant Simpson that when Hobbs arrived at the gas station, he and Hobbs contacted the police. Moreover, the appellant acknowledged in his

statement that he knowingly and falsely reported the car stolen. The evidence is sufficient to support the conviction.

## B. Victim's Drug Use

The appellant contends that the trial court erred by refusing to allow him to question the victim about the victim's drug use because the information was relevant to show that he sold drugs to the victim and was trying to get away from the victim when he crashed the car into the tree. The State argues that the trial court properly determined that the victim's drug use was irrelevant. We conclude that the appellant is not entitled to relief.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. It is within the trial court's discretion to determine whether the proffered evidence is relevant; thus, we will not overturn the trial court's decision absent an abuse of discretion. See State v. Forbes, 918 S.W.2d 431, 449 (Tenn. Crim. App. 1995).

After the victim's direct examination testimony, the trial court ruled that the defense could not question the victim about any prior convictions. Defense counsel then asked, "Am I allowed to ask about whether he uses drugs or not[?]" The trial court answered, "I don't see why that would be relevant." Defense counsel replied, "Okay. I just want to make that clear."

Although the appellant now contends that evidence about the victim's drug use was relevant to support his claim that he sold drugs to the victim, that the victim became angry and grabbed him, and that he crashed into the tree in an attempt to get away from the victim, the appellant failed to make that argument, or any argument, to the trial court. Therefore, we conclude that the issue has been waived. See Tenn. R. App. P. 36(a). Moreover, the jury obviously considered the evidence carefully, rejecting the appellant's defenses but finding him guilty of reckless aggravated assault as a lesser-included offense of aggravated robbery. Therefore, we discern no plain error. See Tenn. R. App. P. 36(b).

## III. Conclusion

Based upon the record and the parties' briefs, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE